Drake, Ch. J.,
delivered the opinion of the court:
This action is brought to recover damages alleged to have been sustained by the claimant, by reason of his having been deprived of the transportation of certain Indian goods and supplies which he claims he was entitled to transport, under a contract entered into on the 6th of June, 1877, between him and William Nicholson, Superintendent of Indian Affairs, at the Central Superintendency, Lawrence, Kansas.
The only portions of the contract which are here involved are Articles I, III, and VII, and the tabular statement referred to in Article I and annexed to the contract; which articles and statement are as follows:
“Article I. That the said party of the second part shall receive during the fiscal year ending June 30, 1878, all such goods and supplies of the Indian Department as may be offered or turned over to him for transportation by the party of the first part or his agents, and shall transport the same with dispatch, agreeably to the instructions of the said party of the first part, or his agents, and the stipulations of this contract, and shall deliver them in like good order and condition to-the officers or agents of the Indian Department designated to receive them at the several points named and for the rates given in the tabular statement hereto annexed, which tabular statement is hereby made part hereof.
*140 “Article III. That written notice shall be giyen to the patty of the second part or his agents of the quantity of supplies to be transported at any one time, the point of departure, and the point of destination, which notice shall be as follows:
“ For any quantity less than 50,000 pounds, five days; foi any quantity between 50,000 and 200,000 pounds, ten days— 50,000 pounds to move within five days; for any quantity between 200,000 and 400,000 pounds, fifteen days — the first 50,000 to move within five days; the first 200,000 to move within ten days; and for any quantity over 400,000 pounds, thirty days — the first 50,000, 200,000, and 400,000 pounds to move within the time above specified: Provided, That the party of the first part may in his discretion transport by other means, over any of the routes named in the schedule hereto annexed, any goods not exceeding in weight 1,000 pounds at any one time, it being expressly agreed, however, that nothing in this article shall be held to release the party of the second part from the obligation to transport, upon due notice, any and all supplies as offered.
“Article YII. That in case of failure from any cause of the party of the second part to meet the requirements of this contract in a proper manner, after due notice shall have been given him, or his agents, then the party of the first part or his agents shall have power to supply the deficiency, either by hire or special contract, or the use of government transportation, as he may elect, and the said party of the second part, and the sureties on the bond given for the faithful performance of this contract shall be charged with the additional cost or expense thus incurred.”

Tabular statement referred to in Articles I anil IX of the foregoing agreement, and made a part thereof

*141 At the time of the letting, awarding, and signing- of this contract, it was known to botli parties that it was arranged by the Indian department that all transportation of Indian goods and supplies from Wichita to the Cheyenne and Arapahoe Agency would and could be done by Indian teams under the charge of John D. Miles, the Indian agent at that agency; but in order to provide against any possible contingency of failure upon the. part of the Indian teams to do such transportation, it was considered by said Nicholson prudent to have some one upon whom the department would have the legal right to call to transport such goods and supplies from Wichita to said agency; and to provide against such a contingency, and to the end that there should be no delay in the transportation of such goods and supplies if the Indian teams failed, the last item of transportation mentioned in the aforesaid tabular statement, to wit, “ From Wichita to the Cheyenne and Arapahoe Agency, 2.10, if required,” was placed in the said contract.
In November, 1877, the Commissioner of Indian Affairs instructed John D. Miles to report directly to him instead of doing so through the office of said Nicholson, as he had done theretofore; and under direct orders issued by the Commissioner to Miles, the latter made arrangements with the firm of Lee & Reynolds, and also with the firm of Murphy & lieilly, to transport Indian goods and supplies from Wichita to the Cheyenne and Arapahoe Agency; and in April, May, and June, 1878, the Commissioner caused to be transported over that route, by those firms, 216,856 pounds of such goods and supplies, though the contract with the claimant was still in force, and he was ready, willing, and able to have transported the same, but he was not called on to transport any part thereof.
.The demand in this suit is for damages sustained by the claimant, by reason of his having been deprived of the transportation done by those firms; and the controlling question of our decision is, whether, undérthe contract, the claimant was legally entitled to that transportation.
In considering this question, the first point to be determined is as to the scope and effect of the word required as inserted in the tabular statement. That word is susceptible of two constructions. It might be held to include all the transportation over that route which the necessities of the Indian department would require during the period of the contract; or it might be *142 considered to refer only to such, transportation as the claimant might be called upon by the Indian department to perform.
In our opinion the former is not the correct view of the intention of the parties in using- that word; because if such had been their intent they would not have coupled it with an if. So coupling it evinces that some contingent event was to occur, in order to the fixation of the claimant’s right to the transportation. As to all the other transportation mentioned in the contract,■ his right was fixed by the mere fact of signing the contract; but as to this it depended on the if.
What, then, was the intent of the parties in connecting the words if required ” with that particular item in the tabular statement?
In our judgment, in the first place, it seems to be plain that the parties intended that that item should stand upon a different footing from the others. If so, what footing should it have? '
We will consider this question, first, in connection with the other parts of the contract, and secondly, in the light of the circumstances under which those words were inserted.
Under the first point of inquiry, let it be observed that Article III provides that—
“ Written notice shall be given to the party of the second part * * * of the quantity of supplies to be transported at an> one time, the point of departure, and the point of destination.”
That any such notice to the claimant would have been a requirement upon him to transport goods and supplies according to the notice cannot be at all doubted; failing in which he would have become liable to the operation of Article YII, which provides that—
“in case of failure * * * of the party of the second part to meet the requirements of this contract * * * after due notice shall have been given him, the party of the first part * * * shall have power to supply the deficiency, * * * and the party of the second part * * * shall be charged with the additional expense thus incurred.”
When, therefore, in the body of the contract a requirement is stipulated for, in terms which include all the items in the tabular statement, why select one of those items and connect with it the words “ if required,” unless it was intended to put that item on a different footing from the rest ? If such was not *143 the intent, then those words are mere surplusage, which may be rejected altogether as superfluous and irrelevant. But no rule is better settled than that the whole contract should be considered in determining the meaning of any and all its parts; and if the purpose of the parties is more clear and certain in some parts of it than in others, those which are obscure may be illustrated by the light of others.' (2 Parsons on Contracts, 6th ed., 601.) We are therefore not at liberty to treat the words if regroreri” as surplusage, but must consider and decide their meaning and intent in the light of the whole instrument. After very careful consideration we have reached the conclusion that it was the intention of the parties that the claimant’s right to that transportation should depend on his being specifically required by the superintendent of Indian affairs at the Central Superintendency, or other authorized officer ’of the Indian department, to perform that particular service.
This conclusion is stengthened by the circumstances under which the item in question was inserted in the tabular statement, as we have above stated them, and which seems to us to afford a reasonable and fit explanation, if any were needed, of the act of the superintendent in inserting that item there, and of the act of the claimant in assenting to its insertion, not unqualifiedly, as in the case of the others, but in the qualified form in which it stands.
When, therefore, we reach the conclusion that the intention of the parties, as we have stated it, is fairly deducible from the words of the contract, without reference to the surrounding circumstances, and moreover find it sustained by those circumstances, we do not see any ground for doubting the correctness of our view. That conclusion is fatal to the claimant’s case. He had no legal right to the transportation from Wicliita to the Cheyenne and Araphoe Agency, unless the proper officer of the Indian department, by a specific act of requirement, called upon him to perform it; and as no Such officer ever made such a requirement, the petition must be dismissed.